The first case today is number 231839, United States v. Ian Freeman. Will counsel for appellant please come up and introduce yourself on the record to begin. Good morning. My name is Richard Carriero and along with my co-counsel, Oliver Bloom, we represent Mr. Freeman. Okay. You're going to reserve any time for rebuttal? Yes, your honor. Two minutes. Two minutes. Okay. And keep in mind you did file a motion regarding the bail matter, so at some point do bring that up, I suggest, towards the end of your argument, so. Okay. So you may begin. Your honor, in this case the government used charges that Mr. Freeman failed to register as a money transmitting business as a springboard for all of its other charges. They told the jury that Mr. Freeman is a money laundering tax cheat who failed to register with FinCEN so that he could operate his criminal scheme under the radar. It was wrong for the government to use those failure to register charges as a springboard for the rest of its case because Mr. Freeman was not required to register. He was not required to register because the government in this case relies on one word, the word funds, in a statute that was enacted long before Bitcoin was ever invented, before there was ever any virtual currency, before Congress could have contemplated that funds would have covered virtual currency. Counsel, what is Bitcoin used for? I gather that it is used as a means of exchange. You can engage in commercial transactions using it. It's a measure of value. It is used in sometimes rather prosaic transactions to buy things. If that's all true, why doesn't that match the plain meaning of the term funds? That's a point that the district court made in its decision. What's wrong with that analysis? What's wrong with that is, well, first of all, we've never disputed, including in the initial motion to dismiss, that the word funds would include within its sort of dictionary definition Bitcoin or virtual currency. That is not our point. Okay. And there's a legion of case law that says that Bitcoin falls within the scope of funds. Our point is that because of the economic significance, because of the social significance, and because it's an area of state law, that is money exchanges, money transmitting, it's an area where state laws also impose regulation, that a federal agency cannot assume power over such a large area, such an important area, and an area of state regulation. You're jumping to the regulation issue. The government insists, and the court charged the jury accordingly, that this is a prosecution that depended entirely on the language of the statute. The regulation, the interpretive guidance, played no role whatsoever in the prosecution. So if that's the case, why should we even get into the major question doctrine? Because they're misreading the statute, your honor. They're misreading 31 U.S.C. 5330. They are correct, and this is why they misread it. 18 U.S.C. 1960 says that it's a crime to not be registered under 31 U.S.C. 5330 or regulations promulgated there under, and I think because of the word, use of the word or in 1960, that's the source of the confusion. However, under 31 U.S.C. 5330, there's only one way to register. A careful reading of that statute, it lays it out. It says the Secretary of the Treasury shall adopt regulations, and people are required, money transmitting businesses are required to register according to those regulations. And there is no other way under 5330 for someone to register, and we know that for a lot of reasons. Number one, the government's own witnesses in this trial testified that the crime was the failure to fill out the particular forms that they had pursuant to their regulations. I think they called it a form 107. We also know it because even the prosecution and the judge during the trial referred to the crime as failure to comply with the regulations. I don't know. But before you get to the regs, you still have to get beyond the statute, which talks specifically about funds. And it's hard for me to understand why you are asking us to give that term something other than the plain and ordinary meaning. This gets to the major questions issue, and I'm not asking you to give it a meaning other than the major questions has to do with the power of an administrative agency. Our argument is that where it's one word that was adopted before the invention of the thing that the agency is purporting to regulate, that it's reading too much in terms of the Congress's intent to say that Congress, when they use that word funds, that they intended to regulate a trillion-dollar industry involving a unique financial tool that did not exist at the time the statute was passed. And it's very similar to the other major questions cases where the court, the U.S. Supreme Court, repeatedly comments that, you know, an arguable textual basis in the statute is not sufficient when it comes to a major questions issue. We concede that Bitcoin falls within the scope of funds. That's not our argument. Our argument is that to read that statute in a situation like this and find that Congress intended to regulate this gigantic thing that didn't exist at the time the statute passed, that that's giving too much power to a federal agency. Congress intended to regulate any kind of monetary system where there could be fraud, abuse, money laundering. And this certainly falls within that category. And the upshot of what was alleged here is that your client was assisting in the laundering of money. I would ask that the court look at virtual currency as it's quite a different thing. It's not just something that's bigger and new. It is different from other, it's not backed by a government. It's not backed by a private, you know, a private bank. It exists only on the internet and it's a, it is unique in that sense. And so to think that Congress intended to regulate something that didn't exist that they couldn't have even imagined at the time and authorize, the main point is it authorized a federal agency to go so far as to regulate that. I think that runs afoul of what the Supreme Court said in West Virginia and the other cases. Let me ask you, there's, they've been cited I think in the government's briefs and I don't know, other circuits have found against your argument. Why do you think these circuits got it wrong? I would respectfully disagree, Your Honor. I think other circuits have found that Bitcoin is within the scope of funds. But I haven't found a, and we checked, I haven't found a case where someone said, we accept that, but our argument is that. So you would say that those circuit cases, it's limited to what funds are. It doesn't go to the issue we have now. We accept those cases, okay. Our argument is that even if they're, you know, taking for granted that it's within the scope of the word funds, that it still runs afoul of the major questions doctrine. The same way that when the EPA went too far in the West Virginia case and they said, well, since we have a right to regulate air pollutants, we have a right to order coal powered production to sort of restructure how they're generating energy. Or the same way that when, in a different case where the court said the federal agency wanted to regulate tobacco and the statute authorized them to regulate drugs and devices, they said, well, you're going too far. Counselor, I want to be sure I understand what you just said. Did you just say that even if the government's sole reliance is on the statutory word funds and there was no reliance on any implementing regulation in pursuing this prosecution that the major question doctrine still applies? Is that your position? Your Honor, I don't think there could be a criminal violation of the statute in the absence of the regulations. And that's what the Supreme Court said in the California Bankers case, that in order for 1960 and for 5330 to be implemented, there have to be regulations. I mean, it was a different version of the statute previously, but the U.S. Supreme Court said that in the California Bankers case. And it makes sense if you, just in terms of common sense, like if you just had a statute that said anybody who does this business has to register, but you didn't provide any guidance about how to do it. They said it doesn't matter whether there's regulations or not. You have to register with the Department of Treasury. So, I mean, it's not a common sense interpretation because how would anybody, I mean, would people just send postcards to the Department of Treasury in Washington? I mean, it's not practical to think that it would work like that. And in fact, as we laid out in our brief, a careful reading of the statute shows that despite 1960 saying violation of the statute or the regulations, 5330 only provides one way to register. So that's the only way, there's only one way under 5330 to register. 5330 doesn't say you can comply with the regulations adopted by the Department of Treasury or its sub-agencies or whatever. Or you can just register on your own with the Department of Treasury. It doesn't say that. It says the secretary shall adopt regulations and money transmitting businesses shall register in accordance with those regulations. So the confusion comes from 1960 where it says the statute or the regulations, but it's impossible to violate it without register, without complying with the regulations. Well, doesn't, oh, sorry. No, go ahead, you go. Okay. I mean, doesn't the, I mean, the statutory language in the disjunctive, doesn't that belie your argument? It talks about statute or regulations. How does that, how does that help your argument? How does, are you referring to the statute of 5330? Yeah, if that's the, you just said that the statute refers both to, to there's a statute or regulations. So you seem to be saying that the government could not proceed despite the disjunctive language without relying on regulations. I don't follow that. Okay. And that's my thought. I'll try to explain it again. The statute that says it's a crime not to register is 18 USC 1960. That statute says it's a crime if you don't register pursuant to 31 USC 5330. And if you fail to register in accordance with that statute or the regulations, then you've committed a crime. However, there's only one way to register under 5330. The only way to register under 5330 is by complying with the regulations. I see that, that's how you can't violate 5330 in any way other than not complying with the regulations adopted by the secretary. And I see I have 30 seconds. I will my question and then I'll move in running over a little bit for the bail. But the question I have is you're asking let's assume we rule in your favor. You're asking then neutral on all other counts, correct? Yes. And you're saying that that is a spillover. Can you explain a little bit in a nutshell why you understand it's a spillover? Sure. And then I, you know, I, and then from there moved to the bail issue. Okay. And, and, and, and in your explanation, could you please explain why that evidence would not have been admissible on some of the other accounts of the indictment? Yes. And I can address that directly. I, I, we're not arguing that the evidence would not have been admissible. There was a money laundering conspiracy charge and we're not arguing that it would not have been. What would have been different though and what caused the real prejudice to the defense in this case is actually what I led with in my opening is that the government used this failure to register and the fact that Mr. Freeman was not licensed as a springboard for the rest of its case. I mean, they, and that's why I read that quote at the beginning that essentially said by failing to register, he was hiding his crimes. How was it a springboard for tax evasion? I'm sorry. How was it a springboard for tax evasion? Well, that's the government said that they called him a money laundering tax cheat who failed to register with FinCEN. So I, it may not be linked logically in everyone's mind, but in the government's argument to the jury, they linked it. But two things can be true at the same time, right? They could be. And I would, I would concede that it's more of a stretch on the tax evasion than on the money laundry. Okay. And you could just, I'm sorry, I didn't answer your question to the matter of bail and the matter of the bail. I think it's pretty straightforward. Um, to my knowledge, there's no dispute about, um, whether Mr. Freeman is a risk of flight or danger to the community, or he's pursuing this appeal as a matter of delay. And you can see from the briefing below and here, it's a pretty substantial issue. The only question is whether there is a substantial chance of success. Um, that's why we waited till the briefs were here. You know, the, whatever, 180 pages of briefs. That's what I was asking. Why wait until now? Because you, you can file this motion with us the minute you file the appeal or even before that, technically. Yeah, honestly, it was because it's an issue not addressed by any other court. It's an issue that I don't think that, uh, I think at first blush, the court would react and say, well, it's within the scope of funds. There's no reason for us to consider it any further, but I believe that having had a chance to read our brief and the reply brief that are, we believe that now you would see that it's a substantial issue. And let me ask you, because he's still, we're talking about the spill over, uh, and you mentioned, we were talking about the tax case, the tax counts, he said, they may be a little bit more difficult as tax count, tax counts. Uh, if there's no challenges, those tax counts aren't, aren't being appealed. Couldn't we just deny bail because he's still going to be serving time or if. I think that in that instance, or would he have to be released? So he would be, may perhaps resentence or what are you specifically asking? If the court reversed some counts and not others, then I believe the court should remand for resentencing. Um, because the judge would about bail, excuse me, question is about bail. If the, if there's merit to the, uh, tax evasion, well, he was on, well, I guess he would say he would still be serving the tax evasion. When you sentence as a district judge, you sentenced for counts one, this is my sentence count to come three. So he's been sentenced separate for everything. He might get it all concurrently, but if you take two out or one out, he's still got those two. So our position would be that if you reverse some of the counts, then there should be a resentencing on all counts. Uh, because he imposed the sentence together. I mean, essentially what he did is he put, uh, Judge LaPlante put 96 months on the, um, conspiracy to commit money laundering count and then all the other counts he did 60 months concurrent. So, uh, I, the, the sentences are so interconnected that I would suggest that the whole case has to be remanded for resentencing, even if you don't reverse those tax evasion counts. Okay. Thank you. And you got two minutes for rebuttal. Let's hear then from the United States, uh, Mr. Lieberman and leave at least one minute at the end to address at some point, wherever you want, uh, or if you want to start with the bail matter, whenever you want, but I will do my best to help you. Thank you. May please the court. Dave Lieberman for the United States with me at council table is assistant United States attorney, John Kennedy. Uh, I'll start with the statutory question. The district court correctly held that the term funds in the money transmitting statute includes Bitcoin. A Bitcoin seller like Mr. Freeman was therefore obligated to register his business with the department of treasury. Uh, and when he knowingly failed to do so, that's a violation of 1960. The district court correctly found the indictment was valid. Uh, uh, opposing counsel, Mr. Lieberman, doesn't the indictment refer to both the statute and regulations? Is that reference to regulation somehow just surplusage and it doesn't really matter? Well, we can always charge in this, the disjunctive, uh, and, but it was very, it became clear both in the, uh, in the motion to dismiss pleadings and then later in the district court's order that the government was focusing on the statute and that's what we focused on here today. So I don't think that the fact that we charge in this, the disjunctive somehow necessarily brings the regulations into the question that the court is considering now. Well, how do you, how do you respond to their argument that it necessarily brings in regulation because there's no other way to register? Yes. So we discussed this on page 30 and 31 of the government's brief and this is the Cal Bankers case. In that case, the Supreme Court said that the criminal penalties associated with the bank secrecy act, uh, will kick in, will come into play once the department of treasury has created a mechanism for businesses to register. As, as we, as we pointed out in our brief, those mechanisms existed at the time of Freeman's offense conduct in this case. In all those regulations, they prescribed the manner and means by which a money transmitting business submits their information to the department of treasury and all those regulations were in place before the offense conduct here. And so this argument lacks merit because the department of treasury had those in place under Cal Bankers. The, the, uh, these criminal statutes are therefore in effect. This case rises and falls on the statutory term funds. And we, we've heard a concession today that the plain meaning of the term funds includes virtual currencies like Bitcoin. As, uh, the panel has noted every other court that has looked at this and we've cited the Sixth Circuit case in Ossoff as our lead case has concluded the same. The Sixth Circuit relied on a dictionary definition from Webster's dictionary that was, I think, very close to the formulation of Judge Lopez and your initial question to opposing counsel, a medium of exchange, a measure of value. And the last textual signal that I'd like to point out is in 1960 B-2 itself, where Congress made clear that the statute reaches quote transferring funds on behalf of the public by any and all means, reinforcing the idea that I think this goes to Judge Thompson, one of your questions that Congress decided to patiently reach all financial instruments, not just hard currencies in our wallet, but virtual currencies as well. Uh, to Mr. Guerrero's point that Congress could not have envisioned Bitcoin in 2001, two responses to that one factual, one legal. My factual point is we disagree. Although Bitcoin wasn't in place in 2001, as we pointed out in our brief, digital currencies were already in place in 2001. And the e-gold case, which we cited is proof of that. That was a case where, uh, defendants were indicted for, uh, violations of the money transmitting statute shortly after the 2001 law came into effect. It was a digital currency, not backed by a government. Uh, and I believe it existed only on the internet. And so that shows that it, given that context, it shows that Congress actually likely envisioned these types of digital currencies. My legal point is it doesn't matter. Uh, we cited Yeski, we cited Bostock, the idea that Congress, the courts follow the plain statutory command. Congress doesn't have to anticipate each factual circumstance that the statute might cover. And I think I can amplify that point with, uh, just some cases that this court has seen. I argued two cases last year involving wire frauds committed on the internet. Uh, this court has had tons of them. Uh, it's, I think I can fairly assume that Congress in 1952, when they passed the wire fraud statute was not contemplating the internet, but courts for decades have had no problem concluding that frauds committed on the internet comes from the wire fraud statute. When Congress ultimately amends the statute, um, requiring registration to specifically refer to virtual currency, uh, that you, you would treat that as as nothing more than a clarification, not a substantive change in the scope of the law. Is that essentially? Yes. And if I could amplify two, two points in response, the, the language that we're arguing about today, transmission of funds was left unchanged, that it existed in 2001. It exists today. And we cited Forrest Grove is also in Scalia Garner, but the idea that when courts, uh, when courts adopt a uniform interpretation of a particular statutory phrase, uh, courts then infer that a later version, perpetuating the same word here, transmission of funds, carries with it to the new legislation, sort of the old soil coming with it. My second point is that Congress in that 2001 legislation didn't just add added value that substitutes for currency, but they also added the word phrase transmission of currency. So they added currency itself. Before that amendment, there was no dispute that the term funds included currency. And I don't know that Mr. Guerriero would dispute that. So this shows that Congress was really, uh, dealing with a belt and suspenders signaling, confirming that Congress wanted this to apply broadly to all financial instruments, particularly given the rapid pace in which they involve that individuals transfer their finances, that criminals launder their proceeds. Oh, so do you even get to the major questions doctrine? No, Your Honor. And for the reasons that I think it was your question, the major questions doctrine tests the validity of an administrative regulation. Did Congress, uh, delegate authority to the agency to execute or issue that disputed regulation? This case turns on statutes. And so we're here doing just a, this court's regular tried and true tools of statutory interpretation, which of course starts with the plain language and then goes to statutory context, case law, all the things that line up in the government's direction. Because there's nothing about this case that turns on the, uh, a regulation issued by the department of treasury, the 2013 interpretive guidance, which is not even a regulation. It was just a state. If we determine like the other circuits that these are funds or analysis should stop there. We don't have to, as counsel was saying, uh, because that's why I asked him, where asking for a circuit split, he said, no, we can see that these are funds. That's not the issue, but this is the issue. And what you're saying is you stop at the funds and that's it. That's precisely right. Judge Helpy, this court traditionally, when it finds that the statutory text is clear, the inquiry stops. That's also the second reason why the major questions doctrine doesn't apply. The, I mentioned the first reason there's no testing of administrative regulation here. The second reason is it only applies to vague statutory terms or subtle devices. And we've heard a concession here today that the term funds plain language includes Bitcoin. And then the statutory framework kicks into play. If I could, I just want to, uh, address two other quick points that judge, uh, seven minutes still so that Mr. Gary made, um, that he, he comments about the, the witnesses. There was some witness testimony that this case turned on a regulation or interpretive guidance. We disagree with that. But the court doesn't need to sort it out because it doesn't matter. This case is coming up or this claim comes up on the denial of a motion to dismiss an indictment. So we're testing the legal validity of the indictment. What happens at trial, the proof, the jury instructions hasn't been raised in this case. Um, the, the final point that, uh, if before I, I wanted to address spillover, but before I, if I just can pause to ask if the court has any other questions, this is only on the, on the motion to this season to dismiss the indictment. You're saying there are no trial issues that we need to consider the lead claim, which is what does funds mean? Uh, does section 1960 does 5330 cover Bitcoin sellers like Freeman that is up to this court on the denial of motion to dismiss the contrary to being a rule 29 issue that was sort of presented to the jury for them to determine, you know, this was, you know, yeah, motion to dismiss. Yes. There are other claims in here that are trial claims, but they're unrelated to the statutory question. Just to ask you quickly about the tax evasion charges, your opponent points out that through cross-examination, um, they got the IRS official to concede that she may not have been able to account for all of the deductions that Mr. Freeman would have been entitled to. And hence there was a possibility that his tax liability would be zero. Um, you know, given that, given that concession, um, how do you, um, how does that factor into the sufficiency of the evidence analysis there that they're making? I mean, that's a pretty striking concession from the government's one witness on those tax evasion charges. I mean, she acknowledges that she couldn't rule out the possibility that he didn't know anything. Why shouldn't that create a reasonable doubt as to those charges? So your honor, and we tried to point out how that exactly the tax law framework works here. The, at least when filing a tax return, the burden on seeking deductions is on the taxpayer. The taxpayer has to file it. If you don't actually file return, you're, you're as a matter of law, not entitled to any deductions. And so the, uh, if you don't, if you don't file, if you don't ask for itemized deductions, you can't get them. And so I think that's the top line point. And the second line point is that a sufficiency of the evidence you said, she had used all the available evidence that she had and concluded that Mr. Freeman owed a tax liability. And she said, yeah, I, I, I didn't have, I, Mr. Freeman obviously didn't seek itemized deductions. So I don't know what he might have claimed. And so I couldn't have possibly calculated that. Of course, Mr. Freeman presented a defense. He could have presented his own witnesses to actually bolster his defense that my deductions would have reduced my liability to zero. But there was nothing on that. So could the jury based on the evidence that it saw regarding undisputed that Mr. Freeman obtained commissions from his local bitcoins.com business, significant commissions, no tax returns, no tax payments. Could they, could the jury find tax evasion in a light, most reasonable to the government? Yes. Your honor, uh, judge helpy, the spillover question. So this goes back to the Simon case, which was spillover claims, test spillover of evidence. And Mr. Guerrero referenced a closing argument, but the doctrine goes to evidence. And what this court said in Simon is that if we rerun the same trial again without the disputed counts and the evidentiary picture is the same, all the same evidence comes in, there's no spillover. And that goes to the district court's ruling 2504 of the joint appendix that his ruling was that evidence is coming in anyways. So he, the judge said all the evidence in this trial would have been admissible in a hypothetical different trial without the disputed counts. There has been no challenge in the briefs or today to that evidentiary ruling by the district court that there was no spillover of any evidence here that resolves the claim both on an abuse of discretion review. I think we're also in Zanino waiver land because the basis of the district court's ruling denial, the new trial was there's no evidentiary spillover is not being challenged before this court council. You you make an argument that seems somewhat unusual to me in response to the spillover argument. You did not appeal the judge's decision to to dismiss that charge post trial. Yet I think you nevertheless, if I understood it correctly, you argue that that ruling was incorrect and you ask us to consider that incorrect ruling in opposition to the merit of the spillover argument. I, I think you cite some authority for doing that. It's a pretty unusual thing to do. Is it not? It is unusual. It doesn't happen often. My response is we want to cover our bases and defend this verdict, which includes mounting every callable defense of the district court's ruling on the spillover, including every alternative basis. And this is an alternative basis. And we cited a second circuit case where this exact thing or posture came up where the government appealed on that, even though it had not appealed the denial of a rule 29 on a separate count. The court doesn't need to reach it. This was simply a defense of the district court's evidentiary ruling. The reason why we didn't appeal was we only seek cross appeals when we are seeking to change the underlying judgment. And the government here after consideration concluded that it was happy with the judgment. It was happy with the sentence and was not going to take a cross appeal that we didn't think was necessary to vindicate our interests. I mentioned to opposing counsel if we were to dismiss the count, the Bitcoin count, the other counts would remain. My, my inclination again, going back to my experience, no resentencing is necessary. It's simply a matter of vacating that conviction. Am I correct? That would be the going to be also what would resentencing take place as to everything? You know, off the top of my head, I like and I'll follow up that this is not actually the government's position, but this court traditionally when they vacate some counts, the usually the default rule is they usually give the district court the option to resentence on the remaining counts just in case the court sentenced as a  I think the inference here is strong that the vacating, the money transmitting counts would not have mattered because it does not affect the conspiracy count, the conspiracy to commit money laundering, which was the 96, 96, 86 that each count is sentenced when a district judge sentences, each count is sentenced individually. Then you, you know, bring them all together or you put concurrent or that's everything. But everybody, each count has been sentenced so far. Yeah, I think this court's general practice is to give the district court at least the option of resentencing. But I'll follow up if, if I'm wrong about that. Mr. Lieberman, I assume that you still object to the posting of bail. Yes, Your Honor. We're happy to rest on our pleadings on that point. It's focuses on this top line statutory interpretation question. And as this argument has confirmed today, plain text, statutory context, case law all lined up in the government's supporting the government's position. And so we don't think that there's a substantial question of law for, for this court to grant bail on. We've had the other counts. And that's what I was going to say. There's even if this count goes, there's the other counts that are not being challenged. Right. In that, in that he's unlikely to get in a, an across the board new trial on all the counts. And so for that reason, we'd ask that the court deny the motion for bail pending appeal. Thank you. Unless the, any further questions? Okay. We'd ask that the court affirm. Thank you, Your Honors. And then Mr. Guerrero, you have a two minute rebuttal. Yes, Your Honor. I have several points. I'll try to get right to them. First of all, if the court vacated the money, transmitting accounts, the unlicensed money and transmitting business counts, I would request that the court remand after review of paragraphs 34 and 35 of the PSR because the amounts of money that went through Mr. Freeman's business were taken into account. And that drove the guidelines up very significantly. I mean, it was millions and millions of dollars. So for that reason alone, I would suggest that if you reverse those. That's not the guideline for every single count, correct? Excuse me? That the guideline you're talking about, the specific one is it doesn't apply to every, every single other count that would remain. Well, the guidelines, the guideline calculation was for all of the accounts that he was being sent and so on. So if that monetary value went down, I think it would reduce the total guideline calculation at the end. That's what we would believe. I believe that the government conceded in its argument that complying, they use the word mechanism, that compliance with the mechanism for registration created by the Department of Treasury is a failure to comply with that is necessary for the crime, which I think that that proves our point that in the absence of regulations, which that's what the mechanism for registration is, in the absence of a regulation, there is no crime. And our point is FinCEN went too far in making its regulations apply to virtual currency sellers. So I, I mean, if, if, if you are conceding that funds incorporates Bitcoins, why is the government's argument that the regulations are only valid methods and means of accomplishing what the statute itself says? Because it was, well, for a couple of reasons, first and foremost, it was FinCEN. It was FinCEN, the agency from the Department of Treasury that decided to extend this statute to Bitcoin, not Congress. Okay. And FinCEN did not do it immediately. It was only as Bitcoin and virtual currency began to grow that they recognized a need. And as we lay out in our brief, even FinCEN said, we don't think funds covers it. And so they put the phrase value that, value that substitutes for currency in their regulation before Congress ever said anything about that. And in fact, Congress considered, this is in our brief, Congress considered adding that language for several years before they finally did, which leads me to believe that it wasn't that they were recognizing something that was already accepted. They were debating about whether or not to do it. And they only finally added coverage for virtual currency in 2021. Counsel, I'm sorry to prolong this, but this is important, at least to me. I thought that Mr. Lieberman was saying that regulations, that specified the mechanics of registration, not regulations that go to the scope of the meaning of funds, whether funds covers Bitcoin, virtual currency, but just regulations that address mechanics of registration. Those regulations were in place prior to this conduct taking place. Is that, do you disagree with that? Do you think that is not correct? No, I agree. I agree that FinCEN was trying to regulate this era, was trying to regulate virtual currency before the statute was amended. And that's exactly what we say is wrong here is that the federal agency shouldn't be making the law. Congress should make the law. And I would, I do want to go back to 5330. And I, if I may, just for a second, if you look at 5330A1, it provides that a money transmitting business shall register with the secretary of treasury. The very next subsection says the secretary shall provide by regulation, the form and manner for registering. And then it provides a registration of money transmitting businesses under subsection A shall include certain listed information. And there's only one way to register under 5330 and that's pursuant to the regulations. And it was the federal agency that modified its regulations to sweep in virtual currency exchanges and Bitcoin sellers and that sort of thing without any authorization from Congress when they hadn't been doing that before. And our point is not that Bitcoin is not funds. It's that they swept in such a huge area of the economy and such an important and unique thing that we should presume that Congress would not authorize a federal agency to have that kind of power on its own. That's the kind of conduct for power that Congress exercises. If I may, just a couple more quick points with reference to Bostock. Bostock is distinguished. Bostock said, well, we can apply terms from 1964 to circumstances now. But in Bostock, the question was discrimination on the basis of sex. Sexual differences existed in 1964. So of course later kinds of discrimination against sex would be within the scope of Title VII. Here Bitcoin did not exist and Bostock's completely inapplicable. Both Bostock dealt with a kind of discrimination that existed at the time the statute was enacted. Are you saying that Bitcoin is so dramatically different from a digital currency that it could not have been the intent to include it? Yes. I mean, it's a, it's a, it's quite a unique thing. And when you think about the fact that it's not just like, you know, I have some numbers on my computer that represent money in my bank account. It's not backed by any government. It's not backed by any private corporation. It exists only on the internet. It has a level of anonymity to it as explained in both briefs. And it's, you know, and this is relevant to our client's position. The reason that he was involved with Bitcoin was because of his political beliefs. He wanted a chance like other people to be able to say there is a way to have your financial life without the involvement of a government or a private corporation. And so it doesn't just have a monetary significance. It has social significance. Okay. Thank you, counsel. Thank you. That concludes arguments in this case.